UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHARLES REED, SR., and RICHARD REED,

                              **No. 6:12-CV-6655T**
                  Plaintiffs,  **DECISION AND ORDER**

            vs.


JAMES M. SHEPPARD, Chief of Police;
POWELL TEVOR, Inv. Roch City Police
Department; ALEX JIMENEZ, Police
Officer, RPD; OFFICER MINERKA, RPD; and
"KNOWN AND UNKNOWN" LAW/POLICE AGENTS,
STATE POLICE,

                  Defendants.

---

## INTRODUCTION

Charles Reed, Sr. ("Mr. Reed") and Richard Reed ("Richard") (collectively, "Plaintiffs") are the father and brother, respectively, of Charles Reed, Jr. ("Parolee Reed"), a person who, at the time of the events at issue, was on parole and subject to the supervision of the New York State Division of Parole ("the Parole Division"). Plaintiffs, proceeding pro se, instituted this action pursuant to 42 U.S.C. § 1981 against Kurt Cashman ("Cashman"),[1] a parole officer with the Parole Division, who was charged with the supervision of Parolee Reed, and various named and unnamed law enforcement officers employed by the City of Rochester Police Department and the New York State Police. Plaintiffs claim that

---

[1] There are discrepancies between the spelling of the names of some of the defendants in the caption and the defendants' actual names. The caption reflects the names as set forth in Plaintiffs' pleadings. Where the Court has been provided with the correct spelling of individual defendants' names, the Court has used these in the Decision and Order.

their civil rights were violated in connection with a search of their residence conducted by Cashman and the other defendants in the course of Cashman conducting a routine visit to what he believed was Parolee Reed's residence. Cashman moved for summary judgment, and this Court granted his request in a Decision and Order dated January 30, 2014 (Dkt #21), finding that he was entitled to qualified immunity. Cashman has been dismissed from the action.

James Sheppard ("Sheppard"), Trevor Powell ("Powell"), Alex Jimenez ("Jimenez"), and Thomas Minurka ("Minurka") of the Rochester Police Department (collectively, "the RPD Defendants") now have moved for summary judgment on the basis of qualified immunity. Plaintiffs opposed the RPD Defendants' motion, and the RPD Defendants' attorney filed a reply declaration. For the reasons set forth below, the RPD Defendants' motion is granted in part and denied in part without prejudice, with leave to refile.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On the evening of July 27, 2012, Cashman, accompanied by a group of uniformed RPD officers, conducted a visit to what Cashman believed was Parolee Reed's residence. At that time, Parolee Reed had been approved by the Parole Division to live in an apartment on the south side of the second floor of a house located at 532 Upper Falls Boulevard in the city of Rochester, New York.[2] Plaintiffs

---

[2]

Although Mr. Reed owns 532 Upper Falls Boulevard with his wife, Lisa Reed, there is no evidence that Mr. Reed or his wife were present during the incident at issue in this matter.

refer to the south-side, second-floor apartment as "Apartment 2."
Apartment 2 was the only apartment in which Parolee Reed was
permitted to reside. At the time of the incident at issue here,
Richard, Parolee Reed's brother, also lived at 532 Upper Falls
Boulevard in Apartment 2. 532 Upper Falls Boulevard has a second
apartment, on the north side of the building, which Plaintiffs refer
to as "Apartment 1." However, Parolee Reed was not authorized to
live in Apartment 1.

On May 31, 2012, in Cashman's capacity as Parolee Reed's parole
officer, he visited Parolee Reed's residence at Apartment 2,
532 Upper Falls Boulevard. At that time, Cashman noticed that all
the other doors to the building—including the door to the north-side
apartment (i.e., Apartment 1)—were blocked, and most of the building
appeared to be boarded up and uninhabited.

On June 16, 2012, Cashman met with Parolee Reed at his office
and discussed Parolee Reed's living situation. Although Parolee Reed
indicated a desire to move in with his girlfriend, he did not
mention moving out of the south-side apartment into the north-side
apartment at 532 Upper Falls Boulevard. On July 10, 2012, Cashman
again met with Parolee Reed at his office and discussed Parolee
Reed's living situation. Parolee Reed did not mention moving out of
the south-side apartment into the north-side apartment.

On July 27, 2012, Cashman, acting upon confidential information
that Parolee Reed had violated the terms of his parole, conducted

3

a home visit of Parolee Reed's approved residence. According to
Cashman, several RPD officers accompanied him on the home visit in
order to provide assistance, if necessary, with containing Parolee
Reed and whoever else might be at the residence.

Upon their arrival at 532 Upper Falls Boulevard, Cashman was
met by Richard, who allowed him to enter the building and provided
verbal confirmation that he and Parolee Reed lived together in
Apartment 2. Parolee Reed was present in a bedroom in Apartment 2.
His girlfriend was in bed with him, and some of his personal
effects, including his pants and his wallet containing his
identification, were nearby. Parolee Reed was in a state of undress
and apparently had just awakened.

The RPD Defendants took Parolee Reed and his girlfriend into
another room while Cashman conducted a search of the bedroom. Hidden
inside a flower pot, Cashman discovered a loaded handgun, which he
turned over to the RPD Defendants for processing. Parolee Reed and
his girlfriend both were arrested, and, according to Cashman, the
RPD Defendants then conducted a search of the residence.

Mr. Reed and Richard subsequently instituted this action
seeking money damages based on the warrantless search of the bedroom
in Apartment 2 where Parolee Reed was found on July 27, 2012.
Cashman moved for summary judgment arguing, _inter_ _alia_, that
Plaintiffs lacked standing and that he was entitled to qualified
immunity. Cashman argued that there was no evidence that Mr. Reed

lived at 532 Upper Falls Boulevard at the time of the search, and that all evidence demonstrated that he is a longtime resident, with Mrs. Reed, of 14 Lavender Circle in the City of Rochester, New York. Plaintiffs contend that Parolee Reed did live in Apartment 1 at 532 Upper Falls Boulevard, and submitted a purported lease executed by him and Mrs. Reed, who co-owned the property with Mr. Reed, indicating that he rented Apartment 1.

In a Decision and Order dated January 30, 2014, the Court found that there was a question of fact as to whether Mr. Reed lived at 532 Upper Falls Boulevard at the time of the search. This finding was based on several documents submitted by Plaintiffs, including Mr. Reed's driver's license, which gave Mr. Reed's permanent address as 532 Upper Falls Boulevard. Accordingly, the Court declined to hold that Mr. Reed lacked constitutional standing. However, the Court agreed with Cashman that he was entitled to qualified immunity because it was objectively reasonable for him to believe the conduct he engaged in on July 27, 2012, was lawful. Cashman was dismissed as a defendant in this action.

The RPD Defendants now move for summary judgment on the basis that they also are entitled to qualified immunity. The RPD Defendants argue that the same factors relied on by the Court in determining that it was objectively reasonable for Cashman, the parole officer, to believe that his conduct on July 27, 2012, was lawful, apply to them, because Cashman enlisted their aid in

effecting the search of the premises. However, none of the RPD Defendants submitted any sworn declarations or affidavits in support of this motion. Plaintiffs filed papers in opposition, and the RPD Defendants' attorney filed a reply declaration.

## GENERAL LEGAL PRINCIPLES

### I.   Summary Judgment

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (citing FED. R. CIV. P. 56(c). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion[,]" FED. R. CIV. P. 56(c)(1) by one or more of the following means:

> citing to particular parts of materials in the record, including . . . affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> . . .
>
> showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1)(A)-(B).

The Supreme Court has emphasized that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not

lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (footnote omitted); <u>accord</u>, <u>e.g.</u>, <u>Scott</u>, 550 U.S. at 380.

## II.  Qualified Immunity

"'Under the doctrine of qualified immunity, a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate clearly established rights *or* if it would have been objectively reasonable for the official to believe his conduct did not violate plaintiff's rights.'" <u>Reuland v. Hynes</u>, 460 F.3d 409, 419 (2d Cir. 2006) (quoting <u>Mandell v. County of Suffolk</u>, 316 F.3d 368, 385 (2d Cir. 2003); emphasis supplied). "If there is a material question of fact as to the relevant surrounding circumstances, the question of objective reasonableness is for the jury[,]" <u>Green v. City of N.Y.</u>, 465 F.3d 65, 83 (2d Cir. 2006) (citation omitted), but "[i]f there is no material question of fact, the court decides the qualified immunity issue as a matter of law." <u>Id.</u> (citation omitted).

## DISCUSSION

## I.   Defendants Sheppard, Powell, and Minurka

The Second Circuit has explained that "[q]ualified immunity is an affirmative defense that must be pled and proved by the defendant." <u>Schecter v. Comptroller of City of N.Y.</u>, 79 F.3d 265, 270 (2d Cir. 1996) (citing <u>Blissett v. Coughlin</u>, 66 F.3d 531, 538

(2d Cir. 1995); other citation omitted); see also Lore v. City of Syracuse, 670 F.3d 127, 149 (2d Cir. 2012). Therefore, the burden of proof rests on the individual RPD Defendants asserting the defense to demonstrate that it was objectively reasonable for each of them to believe that their conduct on July 27, 2012, did not violate any federal constitutional right possessed by Plaintiffs. Field Day, LLC v. County of Suffolk, 799 F. Supp.2d 205, 213 (E.D.N.Y. 2011) (citing Green, 465 F.3d at 83). Here, neither Sheppard, nor Minurka, nor Powell submitted a sworn statement such as a declaration or affidavit in support of their motion for summary judgment. Jimenez, who did submit a declaration, purports to make it "on behalf of former Chief James Sheppard, and on behalf of Trevor Powell and Thomas Minurka." Declaration of Alex Jimenez ("Jimenez Decl."), ¶ 1 (Dkt #27-2). This is insufficient to carry Sheppard's, Powell's or Minurka's burden of proof. See Field Day, LLC, 799 F. Supp.2d at 213-14 (denying summary judgment on qualified immunity grounds to county defendants who merely "describe[d] their activities in general terms collectively, supplemented by argument" and a "declaration [containing] . . . general information, regarding 'many' of the Individual County Defendants"; these pleadings were "simply insufficient to determine which individuals, if any, are entitled to qualified immunity").

In sum, the requests by Sheppard, Minurka, and Powell for summary judgment on the basis of qualified immunity are facially

and substantively deficient because these individuals have failed to come forward with evidence in admissible form to demonstrate that it was objectively reasonable for them to believe that their conduct did not violate any of Plaintiffs' constitutional rights. Their conclusory motion for summary judgment on this ground is denied. E.g., Field Day, LLC, 799 F. Supp.2d at 214 (citing Shechter v. Comptroller of the City of New York, 79 F.3d 265, 270 (2d Cir. 1996); Crawford v. Coughlin, No. 94-CV-494H, 1996 WL 227864, at *4 (W.D.N.Y. June 28, 2011)).

## II.  Defendant Jimenez

The Court turns now to Jimenez, who nominally attempted to comply with Rule 56(c)(1) by submitting a sworn declaration (Dkt #27-2). In determining whether Jiminez is entitled to qualified immunity, the Court will exercise its discretion under Pearson v. Callahan, 555 U.S. 223, 236 (2009), to proceed directly to consideration of the second step of the Saucier v. Katz, 533 U.S. 194, 201 (2001), analysis. That is, the Court will consider the reasonableness of Jimenez's belief that his conduct did not violate a federal constitutional right belonging to Plaintiffs. See Moore v. Vega, 371 F.3d 110, 114-15 (2d Cir. 2004) ("[G]overnment officials enjoy immunity from liability 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'") (quoting Anderson v. Creighton, 483 U.S. 635, 63 (1987); citing Castro v. United States, 34 F.3d 106,

112 (2d Cir. 1994) ("Officials are entitled to qualified immunity when their decision was *reasonable*, even if mistaken.") (emphasis in original; internal citations omitted)). In an action for damages based on an illegal search, assessing the reasonableness of an officer's belief entails asking "whether a reasonable officer could have believed [the] search to be lawful, in light of [1] clearly established law and [2] the information the searching officers possessed." <u>Anderson</u>, 483 U.S. at 641; <u>accord</u> <u>Moore</u>, 371 F.3d at 115 (citations omitted).

With regard to the state of the clearly established law, the Second Circuit has recognized that "the duties and objectives of probation/parole officers and other law enforcement officials, although distinct, may frequently be 'intertwined' and responsibly require coordinated efforts." <u>United States v. Newton</u>, 369 F.3d 659, 667 (2d Cir. 2004) (citing <u>United States v. Reyes</u>, 283 F.3d 446, 463-64 (2d Cir. 2002)). The constitutionality of the coordinated efforts by parole/probation and police depends upon the legitimacy of the supervision objectives being pursued by the parole/probation officers, and not the ultimate level of intrusion. <u>Newton</u>, 369 F.3d at 667 (citing <u>Reyes</u>, 283 F.3d at 464). The Second Circuit found it "difficult to imagine a situation where a probation [or parole] officer conducting a home visit in conjunction with law enforcement officers, based on a tip that the probation officer has no reason to believe conveys intentionally false information about a

10

supervisee's illegal activities, would not be pursuing legitimate supervised release objectives." <u>Reyes</u>, 283 F.3d at 463 (citations omitted).   Thus, for example, the Second Circuit has rejected parolees arguments' that the "special needs" of parole supervision[3] do not extend to parole searches in which police officers participate. <u>Id.</u> at 667-68.

The Court turns now to the specifics of Jimenez's supporting declaration regarding the information he possessed about the search on July 27, 2012. Jimenez indicates that on that date, he "was working as part of Project Impact and with other Rochester police officers and a New York State trooper," Jimenez Decl., ¶ 2, and he "was asked to accompany parole officer Curt Cashman on an inspection and search of parolee Charles Q. Reed, Jr.'s residence. This, [sic] according to the briefing parole officer Cashman provided." <u>Id.</u> Jimenez avers that he understood that "as an incident of his parole," Parolee Reed "signed an agreement permitting such searches and specifying that he was not to possess firearms, among other items." <u>Id.</u>, ¶ 3.[4] Jimenez also understood that "as an incident of

---

[3]

In <u>Griffin v. Wisconsin</u>, 483 U.S. 868 (1987), the Supreme Court ruled that "[a] State's operation of a probation system . . . presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." <u>Id.</u> at 873-74.   Relying on <u>Griffin</u>'s "special needs" exception, the Second Circuit has ruled that "the operation of a parole system also presents special needs justifying a departure from the traditional Fourth Amendment warrant requirement." <u>Newton</u>, 369 F.3d at 665 (citing <u>United States v. Grimes,</u> 225 F.3d 254, 258 (2d Cir. 2000) (<u>per curiam</u>)).

[4]

New York State Division of Parole regulations state that "[a] releasee will permit his parole officer to visit him at his residence and/or place of employment and will permit the search and inspection of his person, residence and

his parole," Parolee Reed "required approval by the Division of Parole of the location where he would reside and that parole officer Cashman had previously visited him at his apartment, #2, at 532 Upper Falls Boulevard in the City of Rochester." Id. Jimenez states that after Richard allowed them to enter the building, Cashman proceeded to Apartment 2, where "he advised he had visited the parolee previously, and [they] found the parolee lying in bed in the bedroom with his girlfriend." Id. ¶¶ 4,5. Jimenez "and the other police officers" secured Parolee Reed, his girlfriend, and Richard, "while parole officer Cashman conducted a search of the bedroom." Id. ¶ 6. Jimenez indicates that Cashman found a gun which he "turned . . . over to one of the police officers present", although he does not identify which officer that was. Id. ¶ 7.

Jimenez argues that he relied solely on the information Cashman provided to him about the search to be conducted at Parolee Reed's residence on July 27, 2012. He contends that because the Court found that Cashman reasonably believed that on the basis of the information he possessed and the state of the law, he was conducting a lawful search of a parolee's residence, then Jimenez objectively and reasonably believed that he was not violating any constitutional rights in accompanying Cashman that night. As noted above, in its prior Decision and Order, the Court agreed with Cashman that the information he possessed made it reasonable for him to believe he

property." N.Y. COMP. CODES R. & REGS. tit. 9, § 8003.2(d).

was conducting a lawful search of a parolee's residence, and that even though the accuracy of the information later was called into question by Plaintiffs, qualified immunity still protected him from liability since any misapprehension on his part was a reasonable mistake of fact.

It is well established that "'no reasonably competent police officers could disagree' that a parole officer cannot properly rely on evidence he knows to be false." Scotto v. Almenas, 143 F.3d 105, 113 (2d Cir. 1998) (internal citation, quotation and alteration omitted). Here, however, Plaintiffs have failed to adduce any evidence that Cashman was relying on information he knew or should have known to be false. Furthermore, Plaintiffs have come forward with no evidence to suggest that Jimenez had a basis to question the veracity of the information that Cashman provided to him or the reliability of the information Cashman himself possessed about Parolee Reed's address. Contrast with Foster v. Diop, No. 11-CV-4731(KAM)(JMA), 2013 WL 1339408, at *1 (E.D.N.Y. Mar. 31, 2013) (denying Rule 12(b)(6) motion to dismiss on qualified immunity grounds where plaintiff's allegations, taken as true and construed liberally, were that "because [parole officer] admitted that she knew the accusations against plaintiff were false, [the parole officer] had a basis to question the veracity and reliability of [plaintiff's employer's] accusations and to investigate those accusations further but failed to do so"). Accordingly, the Court

finds that Jimenez is entitled to qualified immunity because it was objectively reasonable for him to believe that his accompanying of Cashman to execute a warrantless parole search on July 27, 2012, was lawful.

## CONCLUSION

For the reasons set forth above, the RPD Defendants' motion for summary judgment (Dkt #27) is **granted** in favor Alex Jimenez, and is **denied without prejudice with leave to refile** as to James Sheppard, Trevor Powell, and Thomas Minurka. As noted above, the requests by Sheppard, Minurka, and Powell for summary judgment on the basis of qualified immunity are facially and substantively deficient. Should these defendants elect to refile their motion for summary judgment, they are advised that they bear the burden of demonstrating that it was objectively reasonable for each of them, individually, to believe that his conduct did not violate any of Plaintiffs' constitutional rights.

Any refiled summary judgment motion by defendants  Sheppard, Minurka, and Powell is due within **thirty (30) days** of this Decision and Order. The Court will issue a further scheduling order, if necessary.

The Clerk of the Court is directed to terminate Alex Jimenez as a party to this action. The Clerk is further directed to replace "Officer Minerka, RPD" in the caption with "Thomas Minurka, RPD" and to replace "Powell Tevor, Inv. Roch City Police Department," in the caption with "Trevor Powell, Inv. Roch City Police Department."

**ALL OF THE ABOVE IS SO ORDERED**.


S/Michael A. Telesca

_____
        HON. MICHAEL A. TELESCA
        United States District Judge

Dated:      Rochester, New York
            May 27, 2015


15