UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHARLES REED, SR., and RICHARD REED,      **No. 6:12-CV-6655T**
                                          **DECISION AND ORDER**
                        Plaintiffs,

            vs.


JAMES M. SHEPPARD, Chief of Police;
POWELL TEVOR, Inv. Roch City Police
Department; OFFICER MINERKA, RPD; and
"KNOWN AND UNKNOWN" LAW/POLICE AGENTS,
STATE POLICE,

                        Defendants.

---

## INTRODUCTION

Charles Reed, Sr. ("Mr. Reed") and Richard Reed ("Richard") (collectively, "Plaintiffs") are the father and brother, respectively, of Charles Reed, Jr. ("Parolee Reed"), a person who, at the time of the events at issue, was on parole and subject to the supervision of the New York State Division of Parole ("the Parole Division"). Plaintiffs, proceeding pro se, instituted this action pursuant to 42 U.S.C. §§ 1981, 1983, and 1988 against parole officer Curt Cashman ("P.O. Cashman"),[1] who was charged with the supervision of Parolee Reed, and various named and unnamed law enforcement officers employed by the City of Rochester Police Department and the New York State Police.

---

[1] There are discrepancies between the spelling of the names of some of the defendants in the caption and the defendants' actual names. The caption reflects the names as set forth in Plaintiffs' pleadings. Where the Court has been provided with the correct spelling of individual defendants' names, it has used these in the Decision and Order.

P.O. Cashman was the first defendant to move for summary judgment. P.O. Cashman argued that Mr. Reed (but not Richard) lacks standing to bring this action because he does not reside at the apartment that was searched; that Richard failed to establish that he was subjected to an unlawful search and seizure because the residence that was searched was in fact the residence of Parolee Reed, and therefore the defendants were authorized to enter and search the premises; and that P.O. Cashman was entitled to qualified immunity. In a Decision and Order dated January 30, 2014 (Dkt #21), this Court granted P.O. Cashman's motion for summary judgment solely on the basis that he was entitled to qualified immunity. The Court found that there was a question of fact as to whether Mr. Reed lived at 532 Upper Falls Boulevard at the time of the search.

Subsequently, the remaining defendants—former Chief of the Rochester Police Department ("RPD") James Sheppard ("Sheppard"), and RPD officers Trevor Powell ("Powell"), Alex Jimenez ("Jimenez"), and Thomas Minurka ("Minurka")— moved for summary judgment. The Court granted summary judgment in favor of Jimenez, and denied summary judgment as to Sheppard, Powell, and Minurka, because those defendants' requests for dismissal on qualified immunity grounds were facially and substantively deficient. The denial of summary judgment as to Sheppard, Powell, and Minurka was without prejudice with leave to refile.

Sheppard, Powell, and Minurka have renewed their motion for summary judgment (Dkt #32). Plaintiffs filed a "Reply" consisting

of affidavits signed by Mr. Reed and Richard, respectively. Defendants filed a reply memorandum of law.

Because Defendants have submitted evidence in support of the current motion that materially contradicts averments in P.O. Cashman's declaration submitted in support of his summary judgment motion, the Court must sua sponte vacate the Decision and Order granting summary judgment in favor of P.O. Cashman. In addition, because the Court's Decision and Order granting summary judgment on qualified immunity grounds to Jimenez was based on the reasoning of the Court's Decision and Order regarding P.O. Cashman, it also must be vacated. Since the presently pending motion raises arguments regarding qualified immunity based on the facts as averred by P.O. Cashman and on the reasoning of the Court's vacated decisions, it necessarily must be denied in its entirety as well.

## BACKGROUND

Plaintiffs claim that their civil rights were violated in connection with a search of their residence conducted by P.O. Cashman and the other named defendants based on an anonymous tip that P.O. Cashman had received regarding Parolee Reed's alleged participation in gang-related activities and possible possession of a firearm. According to Richard, when P.O. Cashman knocked on the main door to the building at 532 Upper Falls Boulevard on the evening of July 27, 2012, he answered the door. Richard confirmed that his brother was there, and left to go get him; however, he did not direct P.O. Cashman and the RPD officers upstairs to either

Apartment #1 or Apartment #2,[2] which Defendants contend was Parolee Reed's approved residence. Richard states that before he could return with his brother, he was confronted at the upper landing entry to Apartment #1 and Apartment #2 by Powell, Jimenez and Minurka, followed by P.O. Cashman. According to Richard, the RPD officers asked him for his consent to conduct a search of Apartment #2, which he denied.

P.O. Cashman proceeded to enter the bedroom in Apartment #2 which he believed was Parolee Reed's bedroom. There P.O. Cashman discovered Parolee Reed and his girlfriend, Brittany Breedlove ("Breedlove"), partially clothed and in bed.[3] P.O. Cashman proceeded to search the bedroom. In a vase containing artificial flowers, P.O. Cashman discovered a small handgun. After P.O. Cashman's discovery of the gun, law enforcement personnel searched the bedroom and located a safe in the closet. The safe was seized by the RPD officers. P.O. Cashman did not assist the RPD officers in this search.

Plaintiffs assert that they (i.e., Richard and Mr. Reed) resided in Apartment #2, while Parolee Reed resided in Apartment #1. According to Plaintiffs, the bedroom in which P.O. Cashman found Parolee Reed, Breedlove, and the gun (and where

---

[2]

Mr. Reed apparently was not at 532 Upper Falls Boulevard at the time the events began unfolding, but returned home while the RPD officers were still there.

[3]

At some point, Richard, Parolee Reed, and Breedlove were handcuffed and brought to the living room.

the RPD defendants found the safe) was Mr. Reed's bedroom. Mr. Reed was not at 532 Upper Falls Boulevard at the time of the search of the bedroom in Apartment #2. Richard avers that he did not give consent to enter or search any portion of 532 Upper Falls Boulevard.

## DISCUSSION

"[T]he Court possesses the inherent authority to sua sponte reconsider its own orders before they become final (absent some rule or statute to the contrary)." Cusamano v. Sobek, 604 F. Supp.2d 416, 435 (N.D.N.Y. 2009) (citing R.M.S. Titanic, Inc. v. Wrecked and Abandoned Vessel, 924 F. Supp. 714, 716 (E.D. Va. 1996) (stating the court has the power "to reconsider its prior Order either sua sponte under Rule 60(b) of the Federal Rules of Civil Procedure or under its inherent power to modify and interpret its original order"); see also id. n. 30 (citing United States v. Martin, 226 F.3d 1042, 1049 (9th Cir. 2000) ("The authority of district courts to reconsider their own orders before they become final, absent some applicable rule or statute to the contrary, allows them to correct not only simple mistakes, but also decisions based on shifting precedent, rather than waiting for the time-consuming, costly process of appeal.") (citations omitted)); accord F.T.C. v. QT, Inc., 249 F.R.D. 305, 312 (N.D. Ill. 2008) ("This Court has the 'inherent power to reconsider rulings until a final judgment is entered.'") (quoting In re Chetto, 282 B.R. 215, 216 (Bankr. N.D. Ill. 2002)).

When P.O. Cashman moved for summary judgment, he submitted a declaration regarding his personal knowledge of the incident at issue, along with certain records from Petitioner's parole file. In his declaration (Dkt #16-3), P.O. Cashman stated that "acting upon confidential information that Parolee Reed had violated the terms of his parole," he conducted a "home visit" of Parolee Reed's approved residence, namely, "the southern apartment on the second floor[4] of 532 Upper Falls Boulevard." Declaration of Curt Cashman ("Cashman Decl.") (Dkt #16-3), ¶ 17. P.O. Cashman stated that he "knew this to be Parolee Reed's residence because it was so indicated in parole records as his approved residence, because of [a] prior meeting with him in that apartment,[5] because the other areas of the building were boarded up and appeared to be uninhabited, and because [P.O. Cashman] received verbal confirmation from Richard Reed that it was his brother's apartment." Id. P.O. Cashman notes that the police officers "needed to restrain Richard and [Parolee] Reed[.]" Id. ¶ 18.

In Defendants' Rule 56 Statement (Dkt #32-9) filed in connection with the instant motion, they assert that Richard "confirmed [to P.O. Cashman] that he and his brother resided in Apartment #2 in the premises, that parolee Reed was in fact present

---

[4]

This residential unit is also referred to by the parties as "Apartment #2."

[5]

In excerpts of the parole revocation hearing transcript submitted by Plaintiffs, P.O. Cashman admitted that, prior to July 27, 2012, he had never been in Parolee Reed's bedroom. In addition, it appears that, based on P.O. Cashman's testimony at that hearing, he never went inside the building at 532 Upper Falls Boulevard but instead spoke with Parolee Reed outside the building.

in the apartment," and that Richard "directed [P.O.] Cashman and those with him to that apartment." Defendants' Rule 56 Statement ("Defs' Stmt.") (citing Cashman Decl. (Dkt #16-3, resubmitted as Dkt #32-7) & Defendants' Exhibits[6] ("Defs' Exs.") F (RPD Supporting Deposition signed by P.O. Cashman); I, p. 1 (RPD Investigative Action Report filed by Powell); & J (RPD Addendem Report filed by Bennetti, first name unknown). However, none of these exhibits appear to have been submitted in any of the earlier motions for summary judgment filed. These documents clearly would have been relevant to the Court's determination of the prior motions.

In his RPD Supporting Deposition (one of the newly submitted exhibits), P.O. Cashman does not mention anything about being met by Richard at the main door to 532 Upper Falls Boulevard, a significant difference from his Declaration in support of his summary judgment motion. Rather, in his Supporting Deposition, P.O. Cashman simply states he "entered the residence along with members of the [Operation] Impact Detail" and he "spoke w[ith] [Parolee] Reed and explained that [they] were conducting a parole search of his residence. [Parolee] Reed stated he understood and consented verbally." Defs. Ex. F.  P.O. Cashman further states that he entered Parolee Reed's bedroom and searched a vase containing artificial flowers that was just inside the room; he looked inside and saw what appeared to be a small handgun tucked inside the base

---

[6]

Defendants' Exhibits are docketed in eight parts at Dkt #32-10 through Dkt #32-17. These parts do not correspond to the alphabetical labeling of the exhibits, however.

of the vase between the flowers. <u>See</u> <u>id.</u> A somewhat different version of events is given P.O. Cashman's testimony at Parolee Reed's revocation hearing, a portion of which has been submitted by Plaintiffs. The Court notes that another omission from P.O. Cashman's contemporaneous Supporting Deposition is the presence of Parolee Reed's girlfriend in the bedroom that was searched.

The multiple inconsistencies between various parties' statements and the documentary evidence, discussed above, give the Court pause. The shifting and confused state of the factual record, caused by Defendants' piece-meal submissions of relevant documents, is also cause for concern. Because Plaintiffs are <u>pro</u> <u>se</u>, and because the case presents important issues of constitutional magnitude, the Court has elected to <u>sua</u> <u>sponte</u> vacate the 2014 Decision and Order granting summary judgment in favor of P.O. Cashman, which was solely made on the grounds of qualified immunity. The Court notes that in the 2014 Decision and Order it rejected Defendants' alternative argument that Mr. Reed lacked standing to sue, finding that there was a question of fact as to whether he lived at 532 Upper Falls Boulevard with Richard[7] and Parolee Reed, or with his wife, Lisa Reed, at 14 Lavender Circle, at the time of the search. Because the Court's Decision and Order

---

[7]

Defendants have not challenged Richard's standing to sue. At the parole revocation hearing, P.O. Cashman testified that Richard also was a tenant of Apartment #2, which P.O. Cashman believed was Parolee Reed's approved residence. P.O. Cashman testified that, once upstairs, the Reed brothers' apartment was on the left and on the right were some other bedrooms that he thought were a separate apartment.

granting summary judgment on qualified immunity grounds to Jimenez was based on the reasoning of the Court's Decision and Order regarding P.O. Cashman, it also must be vacated. Since Defendants' current motion raises arguments regarding qualified immunity based on the facts as averred by P.O. Cashman and the reasoning of the Court's vacated decisions, it also must be denied in full.[8]

### CONCLUSION

For of the foregoing reasons, the Court denies the Motion for Summary Judgment (Dkt #32) by defendants James M. Sheppard, Thomas Minurka, and Trevor Powell without prejudice, with leave to renew; vacates the Decision and Order dated May 27, 2015 (Dkt #31), granting summary judgment in favor of defendant Alex Jimenez; and vacates the Decision and Order dated January 30, 2014 (Dkt #21), granting summary judgment in favor of defendant Curt Cashman. Accordingly, it is hereby

**ORDERED** that the Motion for Summary Judgment (Dkt #32) by defendants James M. Sheppard, Thomas Minurka, and Trevor Powell is denied without prejudice, with leave to renew; and it is further

**ORDERED** that the Court's Decision and Order dated May 27, 2015 (Dkt #31), is vacated; Alex Jimenez shall be reinstated as a

---

[8]

    With regard to Minurka's request for summary judgment, in particular, the Court notes that his declaration does not cite to any exhibits, such as Investigative Action Reports, to correlate his actions prior to his obtaining a warrant to open the safe seized during the search of Apartment #2. While Minurka states that he did not arrive until after the search was completed, P.O. Cashman, at the parole revocation hearing, identified Minurka as one of the officers who assisted Jimenez in conducting the search.

defendant in this action; and the Clerk of the Court shall modify the caption accordingly; and it is further

**ORDERED** that the Court's Decision and Order dated January 30, 2014 (Dkt #21), is vacated; Curt Cashman shall be reinstated as a defendant in this action; and the Clerk of the Court shall modify the caption accordingly; and it is further

**ORDERED** that Alex Jimenez and Curt Cashman shall be permitted to renew their motions for summary judgment at a later time after discovery has been conducted in this matter; and it is further

**ORDERED** that the case shall be referred to a magistrate judge for the scheduling of a conference pursuant to Rule 16 of the Federal Rules of Civil Procedure.[9]

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    Rochester, New York
          March 31, 2016

---

[9]     The Rule 16 conference initially scheduled was adjourned pending disposition of a previous summary judgment motion, and it was not rescheduled. No discovery has occurred in this matter yet.